Case 15-4147, Ahmad Issa v. Margaret Bradshaw. Argument not to exceed 30 minutes per side. Ms. Schenck, you may proceed with the appellant. Good afternoon, your honors. I plan to reserve 10 minutes of my time for rebuttal. We are here today appealing the denial of a writ of habeas corpus to Ahmad Issa. He was convicted of aggravated murder and a death specification of murder for hire in the Ohio courts. He received a death sentence for the murder and death specification. Issa's conviction rests entirely on hearsay testimony that was admitted in violation of the United States Constitution 6th Amendment Confrontation Clause. The facts that are relevant to the confrontation issue are that there were three co-defendants in the case. First was Linda Criss, the wife of the target victim, Mayor Criss, who purportedly sought to have her husband killed. The second was Andre Miles, the shooter. The third is ostensibly Mr. Issa, who was the go-between, the arranger between the two for purposes of setting up the murder in the case. Of course, it is our position that he should not have been convicted of these crimes. Of the three co-defendants, Linda Criss was tried first. Mrs. Criss testified in her trial that there was no agreement to kill her husband. She had never asked anyone to kill her husband. She had never asked Issa to kill her husband and she never paid Issa any money to kill her husband. At her trial, Andre Miles, the shooter, third co-defendant, also testified. Important in his testimony is the fact that he said that he never spoke to Bonnie and Joshua Willis, witnesses that will arise again shortly in the description of Mr. Issa's case. The second case to be tried was Mr. Issa's case. In that case, Andre Miles, the purported shooter, was called. He had been granted an immunity agreement by the state to come in and testify. Unknown to the people in the courtroom and to Mr. Miles' attorneys, that immunity agreement had been withdrawn the day before. When Mr. Miles took the stand, he refused to testify. The facts around that are fairly complicated. I'll give you the short version, which is that he was the state's witness. There had been a subpoena issued. He was in jail and he was brought over by a call to the jail by the prosecutor and placed on the stand. When Mr. Miles refused to testify, the judge told him he had a duty to testify and mentioned the fact that he had been subpoenaed. The judge never ordered him to testify. The judge never used his contempt powers or any of the powers of the court to enforce the subpoena or secure the testimony and the state never asked the judge to do that. Instead, the state went forward and asked the court to allow them to use hearsay statements purportedly made by Mr. Miles in place of his actual testimony. The judge granted that request immediately and Mr. Miles was excused. The prosecution then called a detective, Feldhaus is his name, who began to talk about Mr. Miles' confession to him. It became apparent very quickly that, in fact, Miles had not implicated Mr. Issa in that confession. The plan moved forward to two people who were mentioned earlier, Joshua and Bonnie Willis. Bonnie was 17, Joshua was 20. Mr. Miles had formerly lived with them and they had maintained a friendship. They had told Detective Feldhaus that Miles told them that Issa had hired him to shoot Mayor Chris on behalf of Linda Chris. The court decided to let them testify. So the hearsay testimony is the Joshua and Bonnie Willis commentary, is that right? The hearsay testimony is the statement that they say Miles made to them. That is the only link between Mr. Issa and the crime against Mayor Chris. There's nothing else. As you'll see in the record, there are some, I would, and we've questioned in the brief whether it's fair even to call it circumstantial, there are some surrounding situations that make it possible, you know, opportunity was available, but there's nothing that links him to the crime. But what I wonder about is where is the constitutional violation in terms of the developing law on the confrontation clause between when your trial occurred and when this issue is being decided under Crawford, for instance? Crawford is, of course, not applicable to the case. The United States Supreme Court has ruled that it's not retroactive and Crawford has no application here. The law that the court was dealing with. So are you saying then that we don't need to consider Crawford at all? I think that's correct, Your Honor. Then is Roberts the case that we should be considering? So it was the purported statements by Miles to Bonnie and Joshua, it was a single he came to their house situation where he made these statements. That's what's at issue. Before we leave this question, isn't there a Sixth Circuit case, Desai, which says that we can't apply Roberts if under Crawford the item isn't testimonial? Your Honor, I am not aware of that case, but if that case says that, I believe that it would be incorrect in this circumstance. Because in this case, and we'll get to that shortly, I think without regard to either Crawford or Roberts, this case falls under the kind of parameters that are set out in Douglas v. Alabama. In that case, if the court will recall, there were two defendants. One had already been convicted and was called to testify in the second defendant's trial. Even though that person had already been convicted, he was refusing to testify and the court allowed the solicitor general to have him sworn in. And he took the testimony or statements by this defendant who had already been convicted and was on the stand, read them to him and periodically said, did you make that statement? And in every instance, he said he refused to answer the question. So that what happened was that the whole statement got read, the jury heard it all, the jury never knew whether or not the statement had been made and there was no way to test whether the statement had been made. You'll recall when I was talking about Linda Chris's trial, Miles testified under oath in that case that he never spoke to the Willises. So even if it were to move into the situation where we were not required to apply Roberts, I think that the Douglas v. Alabama case resolves the question. It was such a denial and the considerations in Douglas that the court cited are very close to the considerations in this case. And I think I have a quick quote that might be useful to the court. The court specifically rejected the idea that cross-examination of Lloyd sitting on the stand using that old statement was valuable. It said, or that cross-examination of others who had been present when they heard the statement made was valuable. Cross-examination of them as to its genuineness could not substitute for cross-examination of Lloyd to test the truth of the statement itself. So the fact that Lloyd could not be cross-examined, A, on the question of whether the statement had ever been made, and B, on the truthfulness of it, was critical in that decision. I'll mention also to the court that even though Dutton v. Evans is a different circumstance, one of the factors the court noted in Dutton was the very fact that Evans was not deprived of any right of confrontation on the issue of whether Williams actually made the statement. In this case, the question about whether the statement was ever made was critical. There was already sworn testimony from the witness in the Linda Crist trial that the statement had not been made. The state, knowing that, came forward and to its benefit withdrew an immunity agreement, got the hearsay admitted, and it was the only link to ESA and the murder for hire. Now with regard, I would say one thing. Although I was not expecting to answer this question, I actually thought about Crawford in this context, and my answer to Crawford is I don't think it should apply, but if it would apply, I think the circumstances here are such that the same considerations that underlie Crawford are at issue here. And that is that what Crawford is really about is going back to first principles when those affidavits and other documents were created for being used in court by the government and the person never got to confront them. This is that case, only this time they just used a live witness instead of a piece of paper, because it was the state's contrivance that brought this hearsay evidence in that was A, in question as to whether it had ever actually been said, B, the only link between the client and the crime, and C, with an absolute inability to ever test whether it was made and whether or not it was truthful. So I think that Crawford, because this came about through the state's activities, would in fact, based on the principles set out in Crawford, even exclude this testimony. I also want to refer the court to Motes. We've cited it in our brief, Motes v. United States. That case said, long before Crawford or Ohio v. Roberts, that when the state is responsible, whether it's negligent or not, for a witness not appearing, you don't get to use hearsay. So Motes should resolve this question without resort to either Roberts or Crawford. In this case, the question of unavailability is not one of physical unavailability, and actually it wasn't really in Motes either. Motes was there. He was in the hallway outside the courtroom. I don't know if the court recalls the circumstances, but there had been some unusual treatment of the witness and how he was cared for and watched over just before testimony. And then when he was actually called, he did not appear. Because he had been let to stay in a hotel, because his care had been entrusted not to one of the marshals, but to a, I believe it was another witness, your honors, but it's someone not a marshal. The court said this was negligence. It's not the fault of the defendant that he's not there. It's because of actions taken by the state and therefore this testimony will not be admitted as hearsay. So I think that regardless of which of the cases you choose, your honors, I believe that Mr. Issa was deprived completely of his right to confrontation. I also think one of the questions that is a critical risk in this case is before the confrontation clause was applied to the states, the United States Supreme Court recognized repeatedly that the right to confrontation, the right to cross-examination, is a critical aspect of a fair trial. And a fair trial and due process are hand-in-hand and Mr. Issa did not get that because he has been convicted on hearsay that he never had an opportunity to confront the reality of which, whether it had ever been said, was at issue and the state knew it with a last-minute withdrawal of immunity that kept the witness from being available for confrontation. Now I had some other things I wanted to talk about assuming we were applying Roberts and I will just say we've covered everything in the brief, I hope thoroughly, but I think what the Ohio Supreme Court did in terms of deciding unavailability fails for confrontation clause purposes regardless of any of the other considerations the court may have. This witness was not constitutionally unavailable. He was there. He had already confessed to the police. He had already testified once. There was no real risk of any kind of self-incrimination. There was no effort made by the court or the prosecuting attorney who was offering the witness to secure his testimony. Wasn't he going to have his own trial later on? Or what was the time frame? The time frame was that his trial took place three months later. So doesn't he run a risk if he testifies any which way that he testifies? If he testifies in conflict with what he said at Chris' trial or if he inculpates himself? Well, Your Honor, he had already confessed in addition to having testified. And the way in which that question is supposed to be answered is the witness is supposed to take the stand and be sworn in. It's a question by question determination as to whether or not there's any real chance of further incrimination. And that didn't happen. He was just let go. So even if that possibility existed, the mechanisms that are in place and that our judicial system and our legal system require to be used were not used. I'm sorry to take a moment, but I do have a note on that. Hello? Can you hear me? Yes. This is Judge Merritt. Can you hear me? Yes, Judge. No. Are you talking to me, Your Honor? Hello? We can hear you. I'm just trying to ask a question. Are you going to get into the problem of the fact that the Linda Chris was apparently, the jury knew nothing about the fact that she had been acquitted. And as I understand it, the facts are that she was the payor and the defendant in your case is the payee and that the verdicts in the two cases are completely inconsistent. And did the jury in your defendant's case ever know that? Your Honor, they did not know that Linda Chris was acquitted. They did not know that she had said that ESA was not involved in any way and there was no scheme for hire. But one of the issues that we do have raised in here is not only the fact that the interactions of the trials resulted in an unfair trial for ESA, but the huge disparity in sentencing. Linda Chris, who supposedly was, as you said, the one who is behind all of it, was acquitted. Andre Miles, who is the one who pulled the trigger, got a life sentence. And ESA, who was the go-between, ends up on death row. So we have a proportionality issue with regard to that that is briefed. And so counsel for ESA at the trial didn't try to get in the evidence that there had been a previous trial and that Linda had been acquitted? No. In fact, Your Honor, our second assignment of error in this case is the fact that counsel was ineffective for failing to have Linda Chris testify. We have argued that because the defense counsel knew, A, that she had been acquitted, B, that she had specifically said that Mr. ESA was not involved in any way, there was no money, there was no plan, nothing, that she should have been called. There's really no way to apply Strickland in this case and not find that counsel was ineffective. This is a murder trial with a death penalty on the table. Her testimony defeats the death specification, which would have taken the death penalty off the table entirely, and says that there was no murder for hire plan because he's never been tied to actually being involved in the murder. In addition to that, could not the lawyer for ESA at the trial have asked that the court trying the case take judicial notice of the fact that there was an indictment in Linda's case, which charged, as it did, a conspiracy, so to speak, or a payment by her to ESA, and that there was a judgment in that case, that is to say, there was a verdict by the jury that had been upheld. Couldn't that have come in just by judicial notice, if anything else? Your Honor, certainly judicial notice of transcripts and proceedings is taken all the time, and that would have been one path. An indictment. I'm talking about an indictment in Linda's case, which set out what she was charged with, which was basically, bang, murder for hire, and then she was acquitted, and that was a judicial judgment entered in the case. I mean, courts take judicial notice of court proceedings all the time, don't they? They do, Your Honor, and I think that's... I'm sorry. Why was no effort made to get it in? I mean, it seems obvious that it's highly relevant. Your Honor, we agree with you. That's why we have our second assignment, or our second error, is the fact that Linda Criss wasn't called. Included in that is the fact that they failed to ask that her testimony be included. I have to say that the actual issue of judicial notice of the indictment and outcome is not a specific issue that's been involved in the case, but by virtue of bringing her in and putting on the record her testimony and the fact that she had testified and been acquitted, the same result would have been achieved. And you're saying that counsel for ESA at the trial didn't even try to get any of this in? Not a bit. The jury for ESA, when the case was over, they didn't have the vaguest idea that Linda had been acquitted of the same crime, basically, that ESA was being charged with. That's true, Your Honor. They did not know that, and they didn't know that she had specifically testified under oath that he had nothing to do with any plan to kill her husband. There was no plan to kill her husband. He was given no money. None of that was before the jury. We think that that second issue, and that cannot be a reasonable decision under Strickland, because counsel can't look at a case where... and state's counsel, the prosecutor, do not have this come in? Your Honor, there is, in the state post-conviction, I believe, some reference. I believe that Mr. ESA has an affidavit that says that one of his lawyers told him that such a deal had been made. We have nothing else for that. It's definitely not in the record other than through that. And I can't imagine, Your Honor, making a deal with the prosecution not to call a witness who can say with certainty that the death specification simply didn't happen, an acquitted witness who can say that the murder-for-hire plan never existed. I mean, she's been believed by one jury. How can you not call her? How can that be a reasonable strategic choice? I see your time has expired. I did have just one question, and maybe you just want to leave this to the briefs. But you raised the issue of ineffective assistance of counsel in failing to call additional witnesses, family members, you know, various relatives and friends from Jordan, and also that ESA's mother and brother were not sufficiently... mitigation testimony. They didn't find out until 15 minutes beforehand or something to that effect. What I want you really to address just very quickly is the Supreme Court has spoken now several times on the issue of mitigation evidence that is viewed as cumulative. And why isn't much of this really just cumulative evidence? It's family members and friends saying he's an honest man, a good guy, a great family person, and all those sorts of things. What takes this out of the realm of just being more of the same? I think a couple of things, Your Honor. One of the important factors here is, as you have obviously recognized, Mr. ESA is a Jordanian citizen. He did not spend his youth growing up in the United States but in Jordan and some time in Kuwait. And most of his family is still in other countries. And as a result of that, what little mitigation was offered came through an interpreter that was not terribly good. We think that there was a defect because of the mitigation preparation that meant that what little was offered was not offered in a way that was understandable or readily digestible by the jury. So to the extent that that is correct and the fact that it happened and the testimony as it existed is on the record, bringing those things in wouldn't be cumulative under any circumstance. But the other thing is that a broader picture was painted because those were family members. These were not necessarily family members. There were more. There was an employer who was available to testify and would have done so. There was a former wife. There were former in-laws. There were people, not immediate family, blood relatives who knew him and could say things about his qualities as a human being, his value as a human being, that simply didn't come through the very limited last-minute testimony that was offered. Thank you. You'll have your rebuttal time. I hope, Ms. Likely, you will perhaps start with this Roberts-Crawford-Desai issue and give us your view of where we stand in terms of the applicable analysis. Absolutely, Your Honor. As Judge Moore, you indicated, this Court did decide the Desai case, and that directly does apply to this case because even if you would find that there was a Roberts violation, Roberts has been overruled. So if ESA would get a new trial, he would get a new trial under the Crawford standard, not under the Roberts standard. And under Crawford, this testimony is non-testimonial. And because it's non-testimonial, the Confrontation Clause doesn't even apply. So even if you would grant the writ on this issue, he's in the exact same position that he's at right now, which is this testimony is admissible. Is there a case that says that Crawford doesn't apply retroactively? Your Honor, yes, there is. I'm not certain that I have that citation for which one says it doesn't apply retroactively, but it doesn't apply retroactively to the defendant's benefit. It seems ironic. If I'm right that there's a case that says it doesn't apply retroactively, Crawford. Your Honor, it's much like the Teague ruling, whereas that is one of the few rulings that are to the State's benefit, whereas an inmate cannot benefit from a new rule. However, the State, if the new rule overrules the old rule, if the result would be the person would be retried under the new rule, then it's completely futile to send it back. So it does make sense. Because if, in this case, again, if ESA is granted the writ, he goes back to State court for a new trial, these statements come in because they're non-testimonial. So they don't even have to go through the hearsay things because it's a non-testimonial statement. So is there any fundamental constitutional principle that would apply, like due process or something like that?  I don't believe there is, Your Honor, not in this situation. Counsel, let me suggest one. The ex post facto law in the Constitution. This defendant was tried when Roberts was the law. And Roberts is more benign, helps him more than the testimonial situation in the Crawford case. And to take away from him, after the fact, the Roberts, more benign law from his point of view, would seem to me to clearly violate the ex post facto provision of the Constitution. With all due respect, Your Honor, don't believe that Roberts benefits Mr. ESA at all in this case. Because for the statement to be allowed in, let's assume for the moment that it did. Then what do you say? Well, Your Honor, I still do not believe that ex post facto provision would bar the use of this statement. And the reason I don't believe that is because in this case, the factors under Roberts are met. And because the factors under Roberts are met, the witness is unavailable. He comes in. He refuses to testify. The state courts were completely reasonable in saying that because his trial was coming up, that the Fifth Amendment was implicated and that contempt powers would not have done anything. Now, again, the standard of review in a habeas case is not whether you would agree with this decision, whether if this case was a federal case coming up on direct appeal, whether you would overturn it. The decision that this court has to make is the standard of review, which is whether the state court was reasonable. And in this case, the state court was reasonable. It was a reasonable decision to find that Miles was unavailable. It was a reasonable decision for the statements to come in. They had sufficient indicia of reliability. So under the Roberts test, this court is bound by the AEDPA standard of review because the state courts decided the case on the merits. So under this court's then precedent of decide, Crawford absolutely would bar this and must be considered because, would bar relief, not bar the statement, would bar relief because granting relief on this issue, he would, ASA would be in the exact same position. Did we just lose the judge? I think we still have him. Okay. Thanks. Okay. I'm sorry, Your Honor. I thought he had. You can continue. Okay. Now, Ms. Shank kept saying that these statements are the only evidence against ESA, and that is incorrect. There are other things that, other pieces of evidence in this case, other than just this hearsay statement or these hearsay statements. People saw Mr. ESA with the same rifle. Ammunition consistent with that rifle were found in his apartment. He told a friend of his to tell the police, if they talked to him again, to say that they were together all night. Both his mother in her post-conviction affidavit and the friend state that he was gone for approximately 30 minutes. Now, I believe mom's post-conviction affidavit says 15 to 30, and the friend's testimony was 30 to 35, but still he was gone away from everybody with access to have acted as the getaway driver for Miles, which is what the theory was. Miles was waiting for ESA that night. Miles, or I'm sorry, Ms. Chris actually had to go and wake ESA up and get him to come to work, but people saw Miles waiting for hours for ESA to arrive that night. People also saw, after the murders, Linda Chris giving ESA a stack of money. So there are other pieces of evidence other than just these hearsay statements. Now, as to Linda Chris's testimony not coming in, first of all, there was an evidentiary hearing heard on this case pre-Penholster. So the court correctly decided that they could not use it, but even if the court could have used those evidentiary hearing testimonies, it only bolstered the state court's decision, only bolstered the reasonableness of that decision, because the trial attorney testified at the evidentiary hearing that she indeed did consider calling Chris. However, she talked to Chris's attorneys, or I'm sorry, talked to the prosecutors in Chris's case, had read the transcripts, had talked to people who had talked to the jurors, had talked to people who had been in the courtroom when Chris was testifying, and described her as a loose cannon. In fact, one of her – Do you think that we should consider this testimony at the evidentiary hearing? Your Honor, I believe that it is important to note that it only helps the reasonableness decision. Can you decide it? Can you use this to decide the issue? No. However, it supports the fact that the state court's decision was reasonable because of this testimony, and that's why I bring it up. But shouldn't it be all or nothing? Counsel, putting Linda on the stand in Issa's case is clearly not the only way to let Issa's jury know that the case against Linda, which charges Linda as the payor and Issa as the payee in the murder for hire, her testimony is not the only way to prove that. You can prove that easily by just showing the jury or having the judge take judicial notice of the indictment and of the judgment as a result of the jury verdict. So, I mean, it maybe would have been better, I don't know, better to have Linda take the stand, but I mean, it's hard for me to believe that a lawyer would try Issa's case and not try to get into evidence. The fact that Linda had been acquitted, I mean, the verdict is completely inconsistent. Well, Your Honor, while I understand your concern, again, this is in habeas. This is not on direct review, number one. Number two, inconsistent sentences are perfectly constitutional, and this court and every other court that has looked at that has said that just because one co-conspirator is acquitted does not mean that there wasn't a conspiracy. And so the fact that Linda was acquitted does not change anything for Issa. It's ineffective assistance of counsel. I'm not saying that you can't have inconsistent verdicts. I'm just saying that the lawyer for Issa apparently never really tried to get it in. Your Honor, it's not in. You better not believe a defense lawyer, criminal defense lawyer, who knows what he or she is doing would not try to get it in. Well, Your Honor, with all due respect, again, you are looking at it from a direct appeal standpoint, not a habeas standpoint. And there's a double layer of deference in ineffective assistance of counsel in habeas claims. So if there is no ineffective assistance, then this issue doesn't even come up. And the fact of the matter is there is no ineffective assistance of counsel here because, one, under Ohio evidence rules, I don't know that this would even be permittable to be admitted to the jury because it is a separate trial of a co-conspirator or co-defendant. I do not believe that it would make any difference because, quite honestly, the testimony that we have from Linda that is in our record is only an excerpt. It is not her entire testimony. It is, I believe, just part of her direct. It is not the cross. It is not the redirect. And I don't believe it's even the entire direct. So if they had put in only the excerpt that they had attached to the post-conviction, the state certainly could have brought in everything else. Well, because that's not in the record, we don't know if the other parts of that testimony was more damaging to EISA than the limited portion that was placed in front of the state courts and in front of this court. So it's very hard to say that it was ineffective assistance of counsel to not call her, to not put this testimony in without knowing what the rest of the testimony is because it's certainly reasonable that the rest of the testimony that Mr. Eisa's attorneys and state court chose not to provide in the appellate record was actually damaging because if it was beneficial to him, they certainly would have put in all of it. And so that's a completely reasonable inference. And the state courts are within their realm to make that. This court is unfortunately, for you, it's bound by that because this is a doubly deference. Bound by what? You're bound to... Bound by what? You're bound to the AEDPA deferential standard. And it's a double deference because an attorney is presumed to be competent. You don't presume that they are incompetent. You presume that they are competent. So you have that layer of deference. Then you have the layer of deference to the state court decision under the AEDPA. So under Rickard, you have to doubly defer in ineffective assistance of counsel cases. We can't say that not bringing to the attention of the Eisa's jury that Linda had been acquitted of the crime of paying him to kill or have killed her husband. You're saying that there's nothing you can do about that. That's fine. You end up with a death penalty, right? Well, Your Honor, you actually have, in a sense, two people doing the hiring. You have Linda who hires Eisa. You then have Eisa who hires Miles. So in this case, it's arguable... I understand that, but Miles had not been tried, but Linda had been tried and acquitted of basically the same crime. Well, Your Honor... You would think that that would be relevant. Well, Your Honor, relevant and admissible are two different things, number one. Number two, because you have Eisa who is then hiring Miles, you still have the murder for hire specification. Even take Linda out of this. If Miles doesn't just go and shoot the Crisses because he feels like it, Eisa hires him to do it. So Linda hires Eisa. Eisa then arguably is even more culpable because not only that, he's doing this purely for money. He's getting the money, and he's keeping clean hands by getting somebody else to do the shooting. It was the theory of the State at the trial that Linda had hired Eisa and Eisa had hired Miles. Yes, Your Honor. So did Eisa's lawyer at the trial try to get in the acquittal of Linda? I don't believe that they tried to get in the acquittal. No, Your Honor. And you were saying that Ohio law, Ohio evidence law, would prevent that from being introduced? Your Honor, it's been quite a while since I've actually done trial work. But I cannot recall a rule of evidence that would allow me as a trial attorney to bring in that a co-defendant tried separately had a different result. I mean, that's one of the reasons you have separate trials. So I cannot think of any way under Ohio law that that would have come in anyway. So then there would be a question, if that's banned by Ohio law as a matter of Ohio evidence law, is there a constitutional issue involved in depriving Eisa of his right to have the full set of facts in front of the jury? No, Your Honor, because again, the theory was Linda hired Eisa, Eisa hired Miles. So even if you take the Chris part out, you still have murder for hire. And that's what the specification was. It wasn't this grand scheme. It was murder for hire. Well, whether Linda was the one who instigated this or Eisa is the one that instigated it, it doesn't matter. Eisa still hired Miles to do the killing. But the state didn't. You know, it might make a difference to the jury about whether they execute this guy or not. I mean, when you have the hearing on the sentencing, it might make a difference to the jury to know that not only is Linda not getting the death penalty, she is acquitted. Well, Your Honor, that doesn't, I mean, that's not one of the factors for sentencing. The factors for mitigation are particular to Eisa. I mean, that's the whole point of individualized sentencing is the mitigation is centered on the traits of Eisa, not on the other things that are going on around. But one serious question, though, is if Linda is acquitted and the state's theory was that Linda hired Eisa, what on earth would possess Eisa to hire Miles if Linda wasn't involved? Well, Your Honor, motive is not an element of the crime of murder. But there's the question of whether it's a realistic set of circumstances that you're asking the jury to reach in concluding that Eisa hired Miles. Well, under the theory was that Linda hired Eisa. Eisa doesn't do the shooting. Miles does. So the connection there to her husband being dead and her doing the hiring is Eisa. And Eisa is the one who provided the gun because he's seen with the gun. He is seen with ammunition consistent with the gun is found. Money is seen. But there's an explanation for the money. Well, they're running stores and they need to take money to safe places and so forth. Well, that was one argument. But, again, that was, I believe, contained in the excerpt from Linda's trial, her testimony. That is, again, not the entire testimony. And we don't know what the cross-examination on that issue was because Eisa's post-conviction counsel chose to not put that into the record. So, you know, you're making assumptions based on not having the rest of the transcript. And we can't do that in habeas. I mean, that is not the providence of the habeas court. If the state courts make a decision that is arguably reasonable, this court is bound to uphold that. Could you address at some point in your time the question about IAC in developing the mitigation witnesses? And the fact that they're just cumulative? Right. Or any other issue that you think is important for us to know if we have concern about the failure to develop the mitigation witnesses? Sure. First of all, the additional family members are purely cumulative. They are verging on the exact same themes that the brother and the mother, I believe it's Jamal and Sarah, had testified to. The ex-wife, Ms. Shank had brought up that they should have contacted the ex-wife. Again, going back to the trial attorney's evidentiary hearing testimony, there were domestic violence charges that she had looked at, she considered calling the ex-wife, and there were domestic violence charges. And she had testified that she had read those affidavits and thought it would be just too dangerous of testimony to bring her in. Again, the state court decided this on the merits, so it's a reasonableness standard. And the evidentiary hearing testimony just supports that reasonableness. The trial attorney didn't just ignore all of this other stuff. She examined it and decided not to use it. I thought there was evidence that the mother and brother were not developed in the sense of any thorough exploration or instruction to them as to what kinds of things would be helpful on mitigation, but rather there was just a very quick interview by the defense counsel, and that the mother and brother hadn't even known that they would be testifying. So how do you deal with that being adequate? Well, Your Honor, again, those are their affidavits. The fact of the matter is the attorney started mitigation six-plus months before the mitigation hearing. They started preparing this. Their mitigation expert had been in contact with family in Jordan, had contact with ESA and had been given names of people to talk to in Jordan. They sought out to obtain and did obtain documentation from Jordan. They were absolutely dealing with a language barrier with the Jordanian citizens and the time difference. But the other thing is those affidavits that are from the family members, they were written in English, then transposed into Arabic. So the district court correctly said these pose an incredible authenticity problem as well. So it's hard to take anything that is in there and kind of hold stock and barrel into that. Of course, they're biased. As to the other available witnesses, the former employer, the trial attorney, had stated in her evidentiary hearing, actually didn't press charges but let ESA go for theft. Well, that wouldn't exactly have been very helpful testimony when the state would cross-examine him. As to the relative of, I believe, one of the ex-wives, her affidavit says she was bedridden. Well, how was that testimony going to happen? The fact that ESA was a nice guy and brought her medicine when she needed it, well, the mom and the brother testified that he was a nice guy and was sending money back to Jordan to support them. So again, that would have been cumulative to testimony that was already before the jury. I would disagree that the mother and brother didn't know what they were coming for. I mean, they were flown here from Jordan for the mitigation. They had been talked to multiple times overseas through, I believe it was a cousin or sister, had been doing the interpreting. Any of this additional mitigation would have been cumulative. If there are no further questions, we will stand on our briefing for the remainder of the issues. Okay. Apparently there are no further questions, so thank you. Thank you. Your Honors, I'm going to try to go through my notes in the order in which I took them. I'll start back with the question of Crawford and the matter at hand in light of Crawford. And I would like to just reiterate that I think that the important thing about Crawford, if this Court decides that is in fact the factor that needs to be, the case that needs to be applied, is that what Crawford's about is first principles. It goes back to why the Confrontation Clause existed. And although it makes some specific rulings about prior testimony, what it dealt with was depositions and affidavits that had been orchestrated by the government that were then used and deprived the accused of the opportunity to confront the witnesses who had produced those orchestrated materials. This case is that case. It's just that they used a live witness instead. The state orchestrated this. The state benefited greatly. Miles was not going to say, just as he didn't when he confessed to Detective Feldhaus, just as he obviously didn't during the Linda Criss trial, he was not going to implicate ESA. And they found that out. And so what they did was they withdrew an immunity agreement and didn't let him testify, didn't let him be confronted. So it was the state's orchestration that produced this unconfrontable accusation against ESA. I know my time is short, but I will say, as I did briefly at the beginning, those things that are referred to as evidence, they are not evidence that links ESA to the crime. There is evidence that he had a gun like the gun that was used in the crime. There's evidence that a bullet was found in his apartment that would have gone into that gun. But it's not the same brand of bullets that was used in the murder. There is evidence that there was a period of time somewhere between 15 and 35 minutes where he was not with anybody on the evening that the crime took place. That's not something that says he did it. It just says there was a gap in time. None of this links him to the crime. None of this says he was there, he pulled a trigger, he had money, none of it. So there isn't any more evidence that links him. The only link to him is this testimony. So again, I would urge that even if Crawford needs to be applied, that this case fits the spirit of the considerations that were taken into account in Crawford. I believe, Your Honor, the case you were asking about where they said Crawford is not retroactive is Wharton v. Brockting, 549 U.S. 406. The next thing that I'd like to address is Linda Criss and the fact that she was not called as a witness. There is, of course, under Strickland, the fact that a strategic decision is a strategic decision, but even strategic decisions must be reasonable. And you cannot look at this case and see it as reasonable not to call the person acquitted. But what about the problem that there wasn't the fullness of her testimony in the record? So we don't know what was omitted from her actual testimony. We don't know whether she, in fact, would be a favorable witness. Well, Your Honor, I think that the fact that what she said is there and is on the record answers the first question. What she said that's favorable to you is there, but because the full testimony wasn't there, we don't know what else she said, right? Well, I think as the Court has often said, the Court must judge it on the evidence that was before the courts below. And so whether or not there's something else that might have been or could have been that's not here now doesn't change anything. What this Court has is what's before it. But the other thing is if we're going to indulge in differences, I would say that if there was anything there that was damning, it would have been brought in by the State, first at post-conviction and second in federal habeas, and it was not. So if we're going to infer anything about that, it's the fact that it wasn't helpful to the State. So back to the point I was trying to make on Linda, Chris, and Strickland. You've got to remember capital case death specification, acquitted witness, no problem with confrontation clause issues, no problem with the Fifth Amendment, who can be called and testify that there wasn't a murder for hire plan. She specifically says there is not. So that's... Did she say that there was a plan to sort of scare her husband? There was a thing that happened in the police department where she made some kind of a statement that at one point implicated ESA or something, but she retracted all of that. She said that she did it to cooperate with the police, and she talked about all of that at her trial, and apparently... That could have come in then. That would have been negative to ESA. The theory could then be that she hired ESA to scare her husband and that things went bad. Your Honor, what I can tell you on that right now is that I believe that is in the record that you have. So it does not overcome. You know, one of the things that keeps being mentioned is the possibility of something damaging coming out. When you are facing a capital crime and a death specification, even if you look like a bad guy, even if you look like a guy who was possibly being... And I don't think he does in this, but I'm just saying, assume for the moment that it looked like he might have been willing to beat someone up or pay someone to beat someone up. Nothing negates the incredible value of saying there wasn't a plan, there wasn't a plot, no money was exchanged. Nothing can undermine, nothing can make it reasonable not to negate that death specification and the basis of the murder charge. So once again, I think they failed to meet the Strickland standard. I think that it was not reasonable and that we should see that Mr. ESA's conviction is reversed based on the ineffective assistance of counsel in not bringing Linda Crispy before the court. What is your best argument that the mitigation evidence that you wish had been introduced was simply cumulative? Well, we don't think it was cumulative. We think that what happened was that they heard old, ill-prepared testimony about childhood matters, testimony about things that came through his family in a not well-organized or prepared fashion, and that what was out there was about his American life, was about the things that he did in the United States, about the many years that he spent doing good things and helping people, taking care of children, providing money to take care of his brothers back home. Those kinds of things coming in through American witnesses, through United States citizens, as opposed to this last minute, practically off the plane, putting people on the stand, was not cumulative. It would have shown a different part of his life. It would have shown his American life. And so it wasn't cumulative. And it would have given them a fuller and more fair picture of who he was, the kind of man he was, and the value that he has as a human being. Did either his mother or brother make reference to his life in America? Because he went back and forth, I think, quite a bit. And, you know, my sense from the record was giving his mother and brother a sense of what life was like in the United States and the fact that his father had, you know, died. He was trying to help support family members, sending money back to Jordan. I guess I'm just wondering, what is it about his American life that was not accurately portrayed? Because we've got to find prejudice here, I would think. I think one of the most important things about his American life that wasn't accurately portrayed was the fact that he had assimilated and become so much a part of the world within which he was living and within which he was functioning, and that he had value in that context. Your Honor, at this moment I'm trying to run through the testimony in my mind, and I would not be surprised if his mother did mention some things. They both did sometimes go back and forth. I thought she covered some of that anyway. So she very well may have. So I don't want to say that some of that didn't come in. But what I can tell you is an organized, well-presented, clearly designed mitigation case that showed who he was and what he was like here and now and at the time that the jury was having to make a decision was not there. And so for all the reasons that we've presented in our briefs and here today, we ask that you reverse Mr. East's convictions and sentence and demand for a new trial. Okay. Well, thank you, counsel, for your arguments this afternoon. We really do appreciate them. The technology worked as intended, so we are happy about that. The case will be submitted, and we'll have a decision for you in due course. Thank you, Your Honor. Thank you very much. With that, you may adjourn court. The honorable court now stands adjourned.